COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-389-CV

 

 

REAL PROPERTY LOCATED AT                                              APPELLANT

4125
BLANTON, WICHITA FALLS,

WICHITA
COUNTY, TEXAS, WITH A

LEGAL
DESCRIPTION OF LOT 1 BLOCK

4
UNIVERSITY PARK B1, WICHITA 

COUNTY,
TEXAS

 

                                                   V.

 

THE STATE OF TEXAS                                                            APPELLEE

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








Appellant Terry Lee Terrell
appeals the seizure of his real property pursuant to chapter 59 of the Texas
Code of Criminal Procedure.  Tex. Code Crim. Proc. Ann. arts.
59.01-.14 (Vernon 2006).  In fifteen
issues, appellant challenges the validity and constitutionality of the seizure
and the legal and factual sufficiency of the evidence supporting the conclusion
that the seizure was proper.  We affirm.      

II.  Background Facts  

On February 8, 2006, acting
on information received from a confidential informant, officers from the North
Texas Regional Drug Enforcement Task Force sought, received, and executed a
search and arrest warrant on appellant at 4125 Blanton, in Wichita Falls,
Texas, the property which is the subject of this case (ABlanton Property@).  During their search, the officers found
appellant inside the residence and conducted field tests for drugs on a bag
with filters, a white bucket containing a brown liquid, and a clear container
with blue liquid.  After receiving
positive results for methamphetamine, the officers arrested appellant and seized
equipment commonly used for producing drugs, containers holding the
methamphetamine, and other drug paraphernalia. 
Appellant was charged with manufacturing an illegal substance in a drug
free zone.[1]








Following the search, the
State filed an Original Notice of Seizure and Intended Forfeiture and a Notice
of Lis Pendens in the 89th District Court of Wichita County against the Blanton
Property on February 10, 2006, asserting that the property met the definition
of Acontraband,@ that
appellant was the owner, and that the property should be forfeited to the State
of Texas under article 59.06 of the code of criminal procedure.  Tex.
Code Crim. Proc. Ann. art. 59.06.  Subsequently, the trial court issued a Aseizure warrant@ for the
Blanton Property.

After a bench trial, the
trial court concluded that the Blanton Property was contraband and ordered that
all of appellant=s interest
in it be forfeited to the State of Texas.  This appeal followed.

III.  Validity of the Warrant

In his first issue, appellant
asserts that the warrant authorizing the seizure of the Blanton Property was
defective because it was entitled Aseizure warrant@ instead of Asearch and seizure@ warrant.

A. Applicable Law








Property subject to forfeiture
under chapter 59 of the Texas Code of Criminal Procedure may be seized under
the authority of a Asearch
warrant.@  Id. art. 59.03(a); State v. Thirty Thousand Six Hundred Dollars,
136 S.W.3d 392, 397 (Tex. App.CCorpus Christi 2004, pet. denied). 
A Asearch
warrant@ in Texas is defined as a Awritten order, issued by a magistrate and directed to a peace officer,
commanding him to search for any property or thing and to seize the same.@  Tex. Code Crim. Proc. Ann. art.
18.01(a) (Vernon 2005); Mulder v. State, 707 S.W.2d 908, 915 (Tex. Crim.
App. 1986).  Specifically, the four
general requirements for a valid search warrant are as follows:

(1) that it run in the name of AThe State of Texas@;

(2) that it identify, as near as may be that
which is to be seized and name or describe, as near as may be, the person,
place, or thing to be searched;

(3) that it command any peace officer of the
proper county to search forthwith the person, place, or thing named; and

(4) that it be dated and signed by the magistrate

 

Tex. Code Crim. Proc.
Ann. art. 18.04;
State v. Manry, 56 S.W.3d 806, 809 (Tex. App.CTexarkana 2001, no pet.).  Further,
the substantive requirements for a search warrant are as follows:

A search warrant may not be issued . . . unless
the sworn affidavit required by Subsection (b) of this article sets forth
sufficient facts to establish probable cause that a specific felony offense has
been committed and that the specifically described property or items that are
to be searched for or seized constitute contraband as defined in Article 59.01
of this code and are located at or on the particular person, place, or thing to
be searched.

 








Tex. Code Crim. Proc.
Ann. art. 18.01(g); see Tolentino v. State,
638 S.W.2d 499, 501 (Tex. Crim. App. 1982); $18,800 in U.S. Currency v.
State, 961 S.W.2d 257, 260 (Tex. App.CHouston [1st Dist.] 1997, no writ). 
Thus, a search warrant may be issued to search for and seize Acontraband subject to forfeiture under chapter 59@ of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. art.
18.02(12); Wall v. State, 878 S.W.2d 686, 688 (Tex. App.CCorpus Christi 1994, pet. ref=d); see Winkles v. State, 634 S.W.2d 289, 291 (Tex. Crim. App.
[Panel Op.] 1981).  Real property
that has been used in the commission of a felony in violation of chapter 481 of
the Health and Safety Code, the Texas Controlled Substance Act, is contraband
subject to forfeiture.  Tex. Code Crim. Proc. Ann. art.
59.01(2)(B)(i); Tex. Health & Safety
Code Ann. ch. 481 (Vernon 2003 & Supp. 2006); One 1995 Dodge
Pickup v. State, 119 S.W.3d 306, 307 (Tex. App.CWaco 2003, no pet.). 
Methamphetamine is a controlled substance, and possession of it is a
felony. 
Tex. Health & Safety Code Ann. '' 481.102(6), 481.115; One 1995 Dodge Pickup, 119 S.W.3d at 307.

B. Analysis

Appellant contends that the
warrant issued to seize the Blanton Property, entitled Aseizure warrant,@ was not
sufficient to satisfy the criteria described above.  Specifically, he asserts that because the
words Aseizure warrant@ do not
appear in Texas case law in isolation from Asearch and seizure warrant,@ the warrant here was invalid. 
We disagree.








First, the warrant meets the
general requirements of a warrant under article 18.04.  The warrant itself identifies the property to
be seized, and the affidavit, which was incorporated into the warrant, also
sufficiently identifies the Blanton Property. 
The warrant is dated and signed by a magistrate and runs in the name of AThe State of Texas.@  The warrant specifically
orders the police officers to seize the real property located at 4125 Blanton,
Wichita Falls, Texas, within three days of the warrant=s issuance.  Thus, the four
general requirements of a warrant were satisfied.  See Tex.
Code Crim. Proc. Ann. art. 18.04; Manry, 56 S.W.3d at 809.

The warrant and accompanying
affidavit also meet the substantive requirements for seizure of
contraband.  The affidavit accompanying
the warrant specifically described the results of the search that occurred two
days earlier.  The affidavit also
included descriptions of the amount and type of drug paraphernalia discovered
in the search and the conclusion of the police officers that the real property
was being used as contraband.  Thus, the
affidavit contained sufficient facts to establish probable cause that a
specific offense had been committed and that the described property constituted
contraband.  See Tex. Code Crim. Proc. Ann. art. 18.01(g); $18,800 in U.S.
Currency, 961 S.W.2d at 260.








Appellant argues that the
seizure warrant is defective because its title, Aseizure warrant,@ is not
recognized under article 59.03.[2]  While the term Asearch@ was not
included in the title of the warrant, the substance of the warrant indicates
that it was issued properly.  See
Green v. State, 799 S.W.2d 756, 757 (Tex. Crim. App. 1990) (stating that
the two objectives of the law concerning search warrants are to ensure that
there is adequate probable cause to search and to prevent a mistake in the
execution of the warrant against an innocent third party).  Moreover, we generally are to look to the
substance of a warrant to determine its purpose as opposed to its title.  Manry, 56 S.W.3d at 809.

In this case, the substantive
components of the warrant were in compliance with the statutory requirements,
and any technical discrepancy in the title should not cause it to be deemed
defective.  See id. (stating that
technical discrepancies are reviewed with a judicious eye for the procedural
aspects surrounding issuance and execution of the warrant); State v. Tipton,
941 S.W.2d 152, 155 (Tex. App.CCorpus Christi 1996, pet. ref=d) (stating that ministerial violations of the search warrant statutes
do not vitiate a search warrant in the absence of a showing of prejudice).  Accordingly, we overrule appellant=s first issue.








IV. Whether a Seizure Occurred

In his second issue,
appellant asserts that no seizure occurred because he was permitted to occupy
the property for over three days after the seizure in violation of article
59.03 of the code of criminal procedure.

Article 59.03(c) governs the
custody status and proper procedures regarding seized property.  Tex.
Code Crim. Proc. Ann. art. 59.03(c). 
Specifically, article 59.03(c) provides, 

A peace officer who seizes
property under this chapter has custody of the property, subject only to
replevy under Article 59.02 of this code or an order of a court. . .
.  Not later that 72 hours after the
seizure, the peace officer shall:

(1) place the property under
seal;

(2) remove the property to a
place ordered by the court; or

(3) require a law enforcement
agency of the state or a political subdivision to take custody of the property
and move it to a proper location.

 

Id. (emphasis
added); State v. Silver Chevrolet Pickup, 140 S.W.3d 691, 694
(Tex. 2004).








In summary,
even if an officer seizes property, a court may order the property to be
returned to the custody of a party. 
See Tex. Code Crim. Proc.
Ann. art. 59.03(c); One Hundred Ninety-One Thousand Four Hundred
Fifty-Two Dollars v. State, 827 S.W.2d 430, 432 (Tex. App.CCorpus Christi 1992, writ denied). 
When a court issues such an order, there is nothing within the statute
indicating that the validity of the seizure is affected.  Appellant has also not cited any contrary
authority.  The legislature cannot have
intended for an order altering the custody of the property to affect the
validity of a seizure under article 59.03(c) because the same article
specifically allows for such an order.  Tex. Code Crim. Proc. Ann. art. 59.03; see
id. art. 59.01(8) (defining Aseizure@ as the
restraint of property by force or by a display of the officer=s authority, and includes taking possession of property); Silver
Chevrolet Pickup, 140 S.W.3d at 694 (stating that seizure means the
restraint of property by a peace officer under article 59.03 whether the
officer restrains the property by physical force or by a display of the officer=s authority); In re K.L.V., 109 S.W.3d 61, 65-66 (Tex. App.CFort Worth 2003, pet. denied) (stating that statutes will not be
interpreted in a manner that leads to an absurd result when another alternative
is available and the cardinal rule of statutory construction requires that each
sentence, clause, phrase, and word be given effect if reasonably possible).








In this
case, the Aseizure
warrant@ that authorized the seizure of the property specifically provided
that the peace officer was Afurther ORDERED to allow only the owner of said property TERRY
LEE TERRELL to remain and to occupy the premises aforementioned in this
warrant.@  Such a warrant is proper.  See Tex.
Code Crim. Proc. Ann. art. 59.03(c); One-Hundred Ninety One Thousand
Four Hundred Fifty-Two Dollars, 827 S.W.2d at 432.  Accordingly, 
we overrule appellant=s second issue.

V.  Appellant=s Constitutional Challenges

In his third
and fourth issues, appellant contends that because the warrant and subsequent
seizure were invalid, the seizure violated his due process rights under the
Fifth and Fourteenth Amendments of the United States Constitution and under
article I, section 19 of the Texas Constitution.  Because we have concluded that the warrant
was valid despite its title and that the proper procedures were followed in
executing the seizure, appellant=s due process rights under federal and state law were not
violated.  See Ramos v. State, 934
S.W.2d 358, 362-63 (Tex. Crim. App. 1996) (holding that evidence obtained from
valid search warrant did not violate constitutional due process provisions), cert.
denied, 520 U.S. 1198 (1997); Phenix v. State, 488 S.W.2d 759, 767
(Tex. Crim. App. 1973) (stating that seizure conducted within parameters of a
valid search warrant did not violate defendant=s constitutional rights where officers acted in accordance with
procedural guidelines).  Accordingly, we
overrule appellant=s third and
fourth issues. 








In his fifth
and sixth issues, appellant contends that the method of seizure violated the
constitutional provisions prohibiting ex post facto laws found in article I,
section 10, clause 1 of the U.S. Constitution and article I, section 16 of the
Texas Constitution.[3]  Ex post facto prohibitions apply to civil
statutes only when the statutory scheme is so punitive either in purpose or
effect as to transform what was clearly intended as a civil remedy into a
criminal penalty.  See Rodriguez,
93 S.W.3d at 67 (holding that the legislature=s manifest intent will be rejected only where the party challenging
the statute provides the clearest proof that the statute is actually criminally
punitive in operation).








Forfeitures
under chapter 59 of the code of criminal procedure are civil, in rem
proceedings against property rather than against the defendant and are not
normally classified as punishment.  See
Tex. Code Crim. Proc. Ann. art.
59.05(e); Fant v. State, 931 S.W.2d 299, 307 (Tex. Crim. App.
1996); Thirty Thousand Six Hundred Dollars, 136 S.W.3d at 413 (stating
that the forfeiture provisions of chapter 59 are remedial, not punitive).  Thus, the ex post facto clauses of the
federal and state constitutions are inapplicable here.  See Fant, 931 S.W.2d at 307.  Accordingly, we overrule appellant=s fifth and sixth issues.

In his
seventh through eleventh issues, appellant asserts that the forfeiture of the
property violates the Excessive Fines Clause of the Eighth Amendment and
article I, section 13 of the Texas Constitution, that article I, section 21 of
the Texas Constitution entitles appellant to strict construction and strict
compliance with chapter 59 of the code of criminal procedure, and that an
incorrect burden of proof was applied to the forfeiture proceedings in
violation of the Due Process Clause of the Fourteenth Amendment of the U.S.
Constitution and article I, section 19 of the Texas Constitution. 

The State
asserts that appellant waived these constitutional challenges by failing to
present them to the trial court.  We
agree.  To preserve a complaint for our
review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling,
if they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a); see also Tex. R. Evid. 103(a)(1).  If a party fails to do this, error is not
preserved, and the complaint is waived.  Bushell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g).








Appellant
never presented issues eight, ten, or eleven to the trial court or asserted
them in his motion for new trial.  He
asserted issues seven and nine for the first time in his motion for new trial;
these issues were untimely presented. 
Therefore, he waived these constitutional issues.  See Dreyer v. Greene, 871
S.W.2d 697, 698 (Tex. 1993) (holding that a claim, including a constitutional
claim, must have been asserted to the trial court to be raised on appeal); Pirtle
v. Gregory, 629 S.W.2d 919, 920 (Tex. 1982) (stating fundamental error in
civil trials survives today in those rare instances in which the record shows
the court lacked jurisdiction or that the public interest is directly and
adversely affected); Loera v. Interstate Inv. Corp., 93 S.W.3d 224, 228
(Tex. App.CHouston [14th Dist] 2002, pet. denied)
(holding that claims raised by appellant for first time in motion for new trial
were untimely and therefore waived).  Accordingly,
we overrule appellant=s seventh through eleventh issues.

VI. 
Testing of Methamphetamine








In his twelfth issue, appellant contends
that the proof of methamphetamine under the health and safety code cannot be
made by field tests alone, and, therefore, the evidence was insufficient to
establish the identity of an illegal substance. 
However, field tests have been used to meet the minimum burden of proof
as evidence of the presence of illegal drugs.  See Gabriel v. State, 900 S.W.2d 721, 722
(Tex. Crim. App. 1995); Smith v. State, 874 S.W.2d 720, 722 (Tex. App.CHouston [1st
Dist]), pet. ref=d, 887 S.W.2d 948
(Tex. Crim. App. 1994).  Therefore, we
overrule appellant=s twelfth point.[4]


VII.  Sufficiency of the Evidence

In his
thirteenth through fifteenth issues, appellant argues that the evidence is
legally and factually insufficient to support the forfeiture judgment.  Specifically, appellant contends that there
was insufficient evidence to establish that the property was contraband and
that the  subsequent seizure was valid.

A.  Standards of Review








A legal sufficiency challenge may only be
sustained when:  (1) the record discloses
a complete absence of evidence of a vital fact; (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; (3) the evidence offered to prove a vital fact is no more
than a mere scintilla; or (4) the evidence establishes conclusively the
opposite of a vital fact.  Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert.
denied, 526 U.S. 1040 (1999); Robert W.
Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 TEX. L. REV. 361, 362-63 (1960).  In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a
reasonable factfinder could, and disregard evidence contrary to the finding
unless a reasonable factfinder could not. 
City of Keller v. Wilson, 168 S.W.3d
802, 827
(Tex. 2005).

An assertion
that the evidence is factually insufficient to support a fact finding means
that the evidence supporting the finding is so weak or the evidence to the
contrary is so overwhelming that the answer should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).








Findings of fact entered in a case tried
to the court have the same force and dignity as a jury=s answers to jury
questions.  Anderson v. City of Seven
Points, 806 S.W.2d 791, 794 (Tex. 1991). 
The trial court=s findings of fact are reviewable for
legal and factual sufficiency of the evidence to support them by the same
standards that are applied in reviewing evidence supporting a jury=s answer.  Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  When findings of fact are filed and are
unchallenged, they occupy the same position and are entitled to the same weight
as the verdict of a jury; they are binding on an appellate court unless the
contrary is established as a matter of law, or if there is no evidence to
support the finding.  McGalliard v.
Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); Raman Chandler Props., L.C.
v. Caldwell=s Creek Homeowners Ass=n, Inc., 178 S.W.3d 384,
390 (Tex. App.CFort Worth 2005, pet. denied).  Conclusions of law may not be challenged for
factual sufficiency, but they may be reviewed to determine their correctness
based upon the facts.  Citizens Nat=l Bank v. City of
Rhome, 201 S.W.3d 254, 256 (Tex. App.CFort Worth 2006,
no pet.); Dominey v. Unknown Heirs & Legal Representatives of Lokomski,
172 S.W.3d 67, 71 (Tex. App.CFort Worth 2005,
no pet.).

The trial
court issued forty-two findings of fact and eighteen conclusions of law.  Appellant has not challenged findings of fact
one, four, seven, nine, ten, eleven, fourteen, sixteen, nineteen, twenty-one,
or thirty-two or conclusions of law four, five, or eight. 

B.  Analysis








We
previously discussed the validity of the seizure warrant and the procedures
taken during the seizure of the property and determined that both were proper
under articles 18 and 59 of the code of criminal procedure, respectively.  Appellant has not offered any additional
evidence to suggest the procedures or requirements of the code of criminal
procedure were not properly followed. 
Therefore, findings of fact two, three, five, six, twelve, eighteen,  thirty-nine, forty, and forty-one and
conclusions of law one, six, fifteen, and eighteen were supported by sufficient
evidence.  We now turn to appellant=s additional evidentiary complaints. 


Article 59
requires that forfeiture proceedings be commenced no later than thirty days
after the seizure.  Tex. Code Crim. Proc. Ann. art. 59.04(a); State v. Lot 10,
Pine Haven Estates, 900 S.W.2d 400, 401 (Tex. App.CTexarkana 1995, no writ). 
Appellant contends that the seizure, forfeiture, and filing of the lis
pendens were simultaneously done in violation of article 59.04, which,
according to appellant, mandates that the property must first be seized before
the lis pendens is filed and forfeiture proceedings begin.  See
Tex. Code Crim. Proc. Ann.
art. 59.04(a), (g).  We disagree with
appellant=s
interpretation of article 59.04.  There
is nothing in the statute, and appellant has provided no relevant law or
discussion, indicating that the simultaneous filing of these documents is
improper.  See Bochas v. State,
951 S.W.2d 64, 70 (Tex. App.CCorpus Christi 1997, pet. denied) (holding that forfeiture of real
property may be adjudicated before the seizure occurs because real property
cannot abscond).








Appellant
also challenges the findings of fact and conclusions of law that a certified
copy of the notice of seizure and intended forfeiture was filed by the State
and served on appellant.  However,
appellant failed to provide any evidence or relevant analysis to support his
challenge.  Therefore, we conclude that
the requirements of article 59.04 were satisfied, and findings of fact eight,
thirteen, fifteen, and seventeen and conclusions of law two, three, and seven were
supported by sufficient evidence.

Appellant
also argues that the evidence was insufficient to establish that
methamphetamine was being manufactured and stored on the property. However, in
the February 8, 2006 search of the property, officers found several types of
drug paraphernalia and several items that field-tested positive as
methamphetamine.  At trial, Officer John
Spragins, an investigator with the North Texas Regional Drug Enforcement Task
Force, testified that he was on the team that searched appellant=s house.  Officer Spragins
stated that he had over seven years of experience as a narcotics investigator,
had investigated A200 to 300@ methamphetamine labs, and had received specialized training in
recognizing and investigating methamphetamine production.








When asked
about the search of appellant=s property, Officer Spragins testified that he found a filter
containing a white powder substance on a work bench in appellant=s garage.  Officer Spragins used
an ANIK field test unit@ to field test the powder, and the powder tested positive as
methamphetamine. According to Officer Spragins, he had used field test units A[t]housands of times.@  Officer Spragins also found a
bag with filters, a white bucket containing a brown liquid, and a clear
container with blue liquid; all tested positive for methamphetamine.  Further, Officer Spragins found a metal fuel
can, an AHCL generator@ containing
sulfuric acid and salt, digital scales, a pill grinder, a coffee grinder with
pink residue inside of it, distillation tubes, Sudafed packaging, syringes, and
glass pipes with burn residue, all of which are items commonly found in
methamphetamine laboratories.  Officer
Spragins found Aa tin box
with two baggies of white powder@ in appellant=s right
front pocket; the powder tested positive as methamphetamine.

According to
Officer Spragins, based on the equipment and total weight of methamphetamine
found, 1,295.5 grams, Ait was obvious
to me that [appellant] was manufacturing methamphetamine and distributing
methamphetamine@ at his
home.  Neither at trial nor in this
appeal did appellant present any alternative theory as to what the equipment
was used for or what the powder and liquid substances were.  Thus, the evidence was legally and factually
sufficient to prove and show that methamphetamine was being manufactured and
stored on the property in violation of chapter 481 of the health and safety
code.  See Tex. Health & Safety Code Ann. '' 481.102, 481.115.  Findings of
fact twenty-five, twenty-six, twenty-eight, and thirty-seven and conclusion of
law twelve were supported by sufficient evidence.








Appellant
also challenges the trial court=s findings of fact and conclusion of law that the testimony of Officer
Spragins that drugs were found on the property and that the property was
located within one thousand feet of an elementary school was true and credible
and unchallenged by the defense.   However, appellant did not to object to
Officer Spragins= testimony
regarding his conclusions from the field tests, did not offer any evidence that
disparaged the accuracy of the field tests, and did not challenge or object to
the location of the property in relation to a public elementary school.[5]  Thus, findings of fact twenty-seven,
thirty-three, thirty-four, and thirty-eight and conclusion of law thirteen were
supported by sufficient evidence.








Appellant
also challenges several of the findings of fact and conclusions of law
indicating that he was the only person with an interest in the property.  Evidence introduced at trial, however,
included appellant=s testimony
that he was the sole owner of the property and that no other person had an
interest in the property.  Further,
appellant testified that he lived at 4125 Blanton, that he paid the bills and
utilities there, and that he did not pay rent on the property to anyone
else.  Appellant also challenges the
finding of fact indicating he did not file a disclaimer of interest as to the
property within the statutory period of time. 
However, appellant failed to offer any evidence to support his
conclusion.  Therefore, we conclude that
findings of fact twenty, twenty-two, twenty-three, twenty-nine, thirty, and thirty-one
and conclusions of law nine and ten were supported by sufficient evidence.

Appellant
also challenges the finding of fact and conclusion of law that narcotics and
narcotic paraphernalia were found on the property.  Appellant argues that the term Anarcotic@ by
definition refers to a different category of drugs.  Significantly, the word Anarcotic,@ is often
used to mean a drug prohibited by law.  Black=s Law Dictionary 1049 (8th ed. 2004); see Hollis v. State,  219 S.W.3d 446, 467 (Tex. App.CAustin 2007, no pet.) (using the term Anarcotic@ to describe
all types of drugs, including methamphetamine); Lee v. State, 143 S.W.3d
565, 567 (Tex. App.CDallas 2004,
pet. ref=d)(same), cert. denied, 126 S. Ct. 2978 (2006).  








The health
and safety code defines Anarcotic
drug@ as opium and opiates and a salt, compound, derivative, or preparation
of opium or opiates.  Tex. Health & Safety Code Ann. ' 481.002(29)(A).  AOpiate@ is defined
as a substance that has an addiction-forming or addiction-sustaining liability
similar to morphine or is capable of conversion into a drug having
addiction-forming or addiction-sustaining liability.  Id. ' 481.002(30).  Thus,
methamphetamine could be classified as a narcotic because of its
addiction-forming liability.  See id.
' 481.032 (Schedule II) (describing methamphetamine as having a potential
for abuse); Rivera v. State, No. 02‑05‑00056‑CR, 2006
WL 743030, at *2 n.4 (Tex. App.CFort Worth Mar. 23, 2006, pet. ref=d) (not designated for publication) (referring to the National
Institute on Drug Abuse, The Science of Drug Abuse & Addiction,
Methamphetamine, http://www.nida.nih.gov/ drugpages/methamphetamine.html (last
visited July 11, 2007) (describing methamphetamine as addictive)); In re
W.D.W., 173 S.W.3d 607, 610 (Tex. App.CDallas 2005, no pet.) (describing party=s addiction to methamphetamine); In re K.C.P., 142 S.W.3d 574,
581 (Tex. App.CTexarkana 2004,
no pet.) (describing appellant as a methamphetamine addict).  

Also, the
forms of narcotic drugs defined by the statute are grouped in the same penalty
group as methamphetamine; thus, the substances carry the same offenses for
possession or manufacture of the illegal drugs.  Tex. Health & Safety Code
Ann. ''
481.002(29), 481.102, 481.112.  








During trial
and in its findings of fact and conclusions of law, the trial court referred to
the drugs found at appellant=s residence as both narcotics and methamphetamine.  Because the trial court used the terms Anarcotic@ and Amethamphetamine@
interchangeably, and because, in this case, both terms referred to the illegal
substance found in appellant=s house, finding of fact twenty-four and conclusion of law eleven were
supported by sufficient evidence.

Appellant
also challenges the finding of fact and conclusion of law that he failed to
offer and prove an affirmative defense. 
Appellant claims this finding was an attempt to switch the burden of
proof in the case.  However, appellant
failed to offer any evidence of an affirmative defense or any relevant analysis
supporting this conclusion.  Appellant
also challenges the finding of fact and conclusion of law that his due process
rights were not violated. However, we previously determined that appellant=s due process rights were not violated during the seizure.  Consequently, findings of fact thirty-six and
forty-two and conclusions of law fourteen and seventeen were supported by
sufficient evidence.

Finally,
appellant challenges the finding of fact and conclusion of law that the trial
court took an adverse inference from his assertion of his Fifth Amendment right
against self-incrimination.  However,
appellant failed to provide any evidence, relevant analysis, or legal theory to
support this statement.  Consequently,
finding of fact thirty-five and conclusion of law sixteen were supported by
sufficient evidence.








After a
careful review of the record, we conclude that the evidence offered at trial
was legally and factually sufficient to establish that the property was
contraband and that the seizure was valid.  See City of Keller, 168 S.W.3d at 827; Garza, 395 S.W.2d at 823. 
Accordingly we overrule appellant=s thirteenth, fourteenth, and fifteenth issues.

VIII.
Conclusion

Having
overruled appellant=s fifteen
issues, we affirm the trial court=s judgment.      

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

 

DELIVERED: July 12, 2007











[1]The
property is located within one thousand feet of Cunningham Elementary
School.  See Tex. Health & Safety Code Ann. '
481.134(b)(1) (Vernon Supp. 2006). 





[2]The
original search and arrest warrant established the proof necessary to issue the
subsequent seizure warrant for the seizure of the real property in compliance
with article 59.03.  See State v.
Anderson, 917 S.W.2d 92, 99-100 (Tex. App.CHouston
[14th Dist.] 1996, pet. ref=d) (holding that personal
knowledge gained by a police officer from a previous search may establish
probable cause necessary for second search warrant if affidavit sets forth
sufficient underlying facts).





[3]An ex post facto law (1) punishes
as a crime an act previously committed which was innocent when done, (2)
changes the punishment and inflicts a greater punishment than the law attached
to a criminal offense when committed, or (3) deprives a person charged with a
crime of any defense available at the time the act was committed.  Collins v. Youngblood, 497 U.S. 37, 42-44,
110 S. Ct. 2715, 2719-20 (1990); Ex parte Davis, 947 S.W.2d 216, 219-20
(Tex. Crim. App. 1996); Rodriguez
v. State, 93 S.W.3d 60, 66-67 (Tex. Crim. App. 2002).





[4]We
address the sufficiency argument on the field test in the next section.





[5]The
State introduced evidence placing the property within a drug-free zone.  See Tex.
Health & Safety Code Ann. ' 481.134.